Ken Ziman (pro hac vice pending)
Shana Elberg (pro hac vice pending)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY 10036
Tel:  (212) 735-3000
Fax:  (212) 735-2000

- and -

Albert Hogan III (pro hac vice pending)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 N. Wacker Drive
Chicago, IL 60606
Tel:  (312) 407-0700
Fax:  (312) 407-0411

*Counsel to Barclays Bank PLC in its capacity as the
L/C Administrative Agent under the Prepetition
LC/Term Loan Agreement*

Tyler P. Brown (VSB No. 28072)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Tel:  (804) 788-8200
Tel:   (804) 788-8218

*Local counsel to Barclays Bank PLC in its capacity as
the L/C Administrative Agent under the Prepetition
LC/Term Loan Agreement*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| PATRIOT COAL CORPORATION, *et al.*, | ) Case No. 15-32450 (KLP) |
| Debtors. | ) (Joint Administration Requested) |

**STATEMENT OF BARCLAYS BANK PLC WITH RESPECT TO THE DEBTORS'
MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361,
362, 363, 364, AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I)
AUTHORIZING DEBTORS AND DEBTORS IN POSSESSION TO OBTAIN
POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL,
(III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (IV) GRANTING
ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (V)
SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF**

Barclays Bank PLC ("Barclays"), in its capacity as L/C Administrative Agent (as defined in the LC/Term Credit Agreement (as defined below)) for the L/C Lenders and L/C Issuers (each as defined in the LC/Term Credit Agreement, collectively with the L/C Administrative Agent  and the other L/C Secured Parties (as defined therein), the "L/C Secured

Parties") under the LC/Term Credit Agreement, hereby files this statement with respect to the motion of the above-captioned debtors and debtors in possession (the "Debtors") for interim and final orders pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 and Federal Rule of Bankruptcy Procedure 2002, 4001 and 9014 (i) authorizing the Debtors to obtain postpetition financing, (ii) authorizing use of cash collateral, (iii) granting liens and super-priority claims, (iv) granting adequate protection to prepetition secured parties, (v) scheduling a final hearing, and (vi) granting related relief (the "Motion").  In support hereof, Barclays respectfully represents as follows:

      1.      On December 18, 2013, Patriot Coal Corporation (the "Company") and certain of its subsidiaries, each of which is a Debtor, entered into a Credit Agreement (L/C Facility and Term Facility) (as amended, modified, supplemented or restated from time to time, the "Prepetition LC/Term Loan Agreement") providing for a letter of credit facility (the "L/C Facility") and a term loan facility with Barclays Bank PLC, in its capacity as the L/C Administrative Agent, Cortland Capital Market Services LLC, in its capacity as successor Term Administrative Agent (as defined therein), Wilmington Trust, National Association, in its capacity as Collateral Agent (as defined therein) and the L/C issuers and lenders thereunder.  As of the Petition Date, there is approximately $198,420,869.55 in undrawn letters of credit outstanding under the L/C Facility.  Obligations under the L/C Facility are secured by substantially all assets of the Debtors, with a first lien on, among other things, the Debtors' fixed assets, including owned and certain leased real property (collectively, the "L/C Priority Collateral") and a second lien on the Debtors' inventory, as-extracted collateral and accounts receivable that do not constitute L/C Priority Collateral (together with the L/C Priority Collateral, the "L/C Collateral").

2.      The Debtors are proposing a $100 million debtor-in-possession financing facility described in the Motion (the "Proposed DIP Facility") to fund their chapter 11 cases that, at this time, do not have a defined path to an exit.  The L/C Administrative Agent files this statement to make clear that, while it is not interposing an objection to the proposed interim order, there are aspects of the Proposed DIP Facility and the proposed adequate protection package that would not be acceptable on a final order basis and remain under discussion among the stakeholders and the Debtors.  The L/C Administrative Agent reserves all of its rights with respect to the Motion and the Proposed DIP Facility including, without limitation, the right to object to any final relief requested in the Motion.

3.      Less than 18 months following its last bankruptcy case, the Company has been forced to return in circumstances that are sobering.  Based on the Company's first-day filings it is apparent that crippling operating losses and a uniquely challenging coal market caused an acute liquidity crisis that compelled the Company to seek chapter 11 relief without a definite plan for how it would reorganize.   Thus, it is obvious that the Company needs liquidity to maintain its operations while it pursues a path forward that has the potential to maximize value and recoveries for its stakeholders.  The L/C Administrative Agent is not opposed in principle to this objective.

4.      Nonetheless, the difficult circumstances that caused the Company to seek relief just at the brink also raise the serious concern that recoveries in this case are far from guaranteed.  The Company's decline has been swift; the path forward is not paved; the environment for a successful reorganization is, frankly, not favorable.  Stripped of any hyperbole, this is a case that presents real risks to the Company's existing secured creditors.  The picture for more junior creditors is concomitantly more complicated.

5. Against this backdrop, the Proposed DIP Facility must be seen for what it is: junior creditors are willing to invest "new money" in the hopes of increasing their odds of recovering on their pre-petition claims. But, through the proposed priming liens, the junior creditors also want to use the collateral that currently secures the L/C Secured Parties pre-petition claims to largely eliminate the risk of their "new money" investment. Thus, under the Proposed DIP Facility, the risk of this challenging reorganization could shift from more junior creditors to the L/C Secured Parties. The L/C Administrative Agent is opposed to this objective.

6. In an attempt to allow the Company access to new capital while at the same time protecting the secured contractual interests of the L/C Secured Parties, the L/C Administrative Agent has engaged with the Company and the Proposed DIP Lenders over the terms of the Proposed DIP Facility. Those discussions have been productive at times, and have allowed the L/C Administrative Agent to gain sufficient comfort not to object to the Proposed DIP Facility and the Debtors' use of the L/C Secured Parties' cash collateral at the interim stage. However, several key aspects of the Proposed DIP Facility and the Debtors' restructuring process remain unacceptable to the L/C Administrative Agent. In particular, the L/C Administrative Agent is concerned about the potential deterioration in the L/C Secured Parties' interests in the L/C Collateral to the extent that an exit path cannot be locked down in short order. To ameliorate such concerns, the L/C Administrative Agent seeks to incorporate milestones in the Proposed DIP Facility that would ensure that the Debtors remain on track with their sale process, while minimizing the harm to the L/C Secured Parties if the Debtors do stray.

7. The law is squarely in favor of the L/C Secured Parties. As a condition to priming under section 364(d) of title 11 of the United States Code (the "Bankruptcy Code"), a debtor must demonstrate that the primed party's interests are adequately protected. In addition,

pursuant to section 363(e) of the Bankruptcy Code, a debtor's use of property shall be prohibited or conditioned on the provision of adequate protection to the party with an interest in the subject property. The purpose of adequate protection is to "guard the secured creditors' interest from a decline in the value of the collateralized property."[1] Given the facts of this case, the L/C Administrative Agent does not believe that the Debtors could possibly meet this standard if the proposed priming lien and the Debtors' use of L/C Secured Parties' cash collateral are contested.[2]

        8.        Nonetheless, the L/C Administrative Agent has chosen not to object to the Proposed DIP Facility at the interim stage. The L/C Administrative Agent views such financing as a bridge to allow the Company to operate while it attempts to lay out an organized path forward. The L/C Administrative Agent does, however, reserve all of its rights with respect to the final order on the Proposed DIP Facility, including specifically with respect to any and all liens and super-priority claims that are proposed in favor of the Proposed DIP Lenders concerning the L/C Collateral. The L/C Administrative Agent intends to continue its dialogue with the Company and the Proposed DIP Lenders, and is hopeful that those discussions and the progress of the reorganization will allow the parties to return with a consensual financing package to support the Company's restructuring efforts. But for now, in light of all the uncertainties surrounding the Debtors, it is simply too early for the L/C Secured Parties to determine how they may be adequately protected under the circumstances. Because the speed of the Company's decline has been startling and the uncertainties of this case are too great, the L/C Administrative Agent must proceed with caution, and with a full reservation of rights to all

---

[1] *In re Panther Mountain Land Development, LLC*, 438 B.R. 169, 190 (Bankr. E.D. Ark. 2010) (citations omitted).

[2] *See In re James River Assoc.*, 148 B.R. 790, 796 (E.D. Va. 1992).

of the Company's proposed relief beyond this interim stage.

WHEREFORE, for the reasons set forth above, Barclays respectfully reserves all of its rights with respect to the Motion and the Proposed DIP Facility.

Dated: May 13, 2015
Richmond, Virginia

/s/ Henry P. (Toby) Long, III
Tyler P. Brown (VSB No. 28072)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Tel: (804) 788-8200
Fax: (804) 788-8218

-and-

Ken Ziman (pro hac vice pending)
Shana Elberg (pro hac vice pending)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY 10036
Tel: (212) 735-3000
Fax: (212) 735-2000

- and -

Albert Hogan III (pro hac vice pending)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 N. Wacker Drive
Chicago, IL 60606
Tel: (312) 407-0700
Fax: (312) 407-0411

*Counsel to Barclays Bank PLC in its capacity as the L/C Administrative Agent under the Prepetition LC/Term Loan Agreement*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 13th day of May, 2015, a true and complete copy of the foregoing was filed electronically with the Clerk of the Court using CM/ECF and served by U.S. mail, postage prepaid and/or by electronic delivery on counsel for the Debtors identified below:

        Stephen E. Hessler
        Patrick Evans
        Kirkland & Ellis LLP
        601 Lexington Avenue
        New York, New York 10022

        James H.M. Sprayregen, P.C.
        Ross M. Kwasteniet
        Kirkland Ellis LLP
        300 North LaSalle
        Chicago, Illinois 60654

        Michael A. Condyles
        Peter J. Barrett
        Jeremy S. Williams
        Kutak Rock LLP
        Bank of America Center
        1111 East Main Street, Suite 800
        Richmond, Virginia 23219-3500


        /s/ *Henry P. (Toby) Long, III*\_\_\_\_\_