Kenneth S. Ziman
Shana A. Elberg
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY 10036
Tel:  (212) 735-3000
Fax:  (212) 735-2000

- and -

Albert L. Hogan III
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 N. Wacker Drive
Chicago, IL 60606
Tel:  (312) 407-0700
Fax:  (312) 407-0411

*Counsel to Barclays Bank PLC in its capacity as the
L/C Administrative Agent under the Prepetition
LC/Term Loan Agreement*

Tyler P. Brown (VSB No. 28072)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Tel:  (804) 788-8200
Tel:   (804) 788-8218

*Local counsel to Barclays Bank PLC in its capacity as
the L/C Administrative Agent under the Prepetition
LC/Term Loan Agreement*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| PATRIOT COAL CORPORATION, *et al.*, | ) Case No. 15-32450 (KLP) |
| Debtors. | ) (Joint Administration Requested) |

**LIMITED OBJECTION OF BARCLAYS BANK PLC WITH RESPECT TO THE DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS AND DEBTORS IN POSSESSION TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF**

Barclays Bank PLC ("Barclays"), in its capacity as L/C Administrative Agent (as defined in the LC/Term Credit Agreement (as defined below)) for the L/C Lenders and L/C Issuers (each as defined in the LC/Term Credit Agreement, collectively with the L/C Administrative Agent and the other L/C Secured Parties (as defined therein), the "L/C Secured

Parties") under the LC/Term Credit Agreement, hereby files this limited objection with respect to the motion of the above-captioned debtors and debtors in possession (the "Debtors") for interim and final orders pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 and Federal Rule of Bankruptcy Procedure 2002, 4001 and 9014 (i) authorizing the Debtors to obtain postpetition financing, (ii) authorizing use of cash collateral, (iii) granting liens and super-priority claims, (iv) granting adequate protection to prepetition secured parties, (v) scheduling a final hearing, and (vi) granting related relief (the "Motion").  In support hereof, Barclays respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      On December 18, 2013, in connection with the consummation of the chapter 11 plan for these Debtors in their prior bankruptcy cases, Patriot Coal Corporation (the "Company") and certain of its subsidiaries, each of which is a Debtor, entered into a Credit Agreement (L/C Facility and Term Facility) (as amended, modified, supplemented or restated from time to time, the "Prepetition LC/Term Loan Agreement") providing for a letter of credit facility (the "L/C Facility") and a term loan facility with Barclays Bank PLC, in its capacity as the L/C Administrative Agent, Cortland Capital Market Services LLC, in its capacity as successor Term Administrative Agent (as defined therein), Wilmington Trust, National Association, in its capacity as Collateral Agent (as defined therein) and the L/C issuers and lenders thereunder.  As of the Petition Date, there were issued and undrawn letters of credit outstanding under the L/C Facility with an aggregate face amount of approximately $198,420,869.55 plus accrued and unpaid letter of credit fees and other unpaid fees, costs and charges.  Obligations under the L/C Facility are secured by substantially all assets of the Debtors, with a first lien on, among other things, the Debtors' fixed assets, including owned and

certain leased real property (collectively, the "L/C Priority Collateral") and a second lien on the Debtors' inventory, as-extracted coal and accounts receivable that do not constitute L/C Priority Collateral (together with the L/C Priority Collateral, the "L/C Collateral"). Obligations under the L/C Facility enjoy a payment priority over the term loan facility that shares in the same collateral, and a lien priority over the $250 million of notes issued by the Debtors, also in connection with the Debtor's emergence from their prior chapter 11 cases.

2. On May 13, 2015, the Court granted approval of the debtor-in-possession financing facility described in the Motion (the "Proposed DIP Facility") on an interim basis and authorized the Debtors to borrow up to $30 million of the aggregate $100 million commitment. Prior to the hearing on the Proposed DIP Facility, the L/C Administrative Agent filed a statement noting that, at the time, the Debtors did not have a defined, viable path to an exit. Unfortunately, this still holds true today. The Debtors' situation remains largely unchanged and there remains considerable uncertainty around the Debtors' cases. The L/C Administrative Agent continues to have concerns regarding the Debtors' cases and the Proposed DIP Facility.

3. The L/C Administrative Agent files this objection on the grounds that any final relief with respect to the Motion is premature and the final hearing on the Proposed DIP Facility should be adjourned for the following reasons. First, the L/C Administrative Agent has learned that the Debtors have received a proposal for alternative debtor-in-possession financing (the "Alternative DIP Facility") on better economic terms than the Proposed DIP Facility. Second, the L/C Administrative Agent and its professionals have had very limited access to diligence materials and other data to assess and test the Debtors' projections and proposed budget and thus come to a view on the need for up to $100 million of priming DIP financing. And third, while the L/C Administrative Agent is informed that a potential purchaser of a large

portion of the Debtors' assets has emerged, the Debtors have not yet shared any detail of the specific terms of the deal or the means by which this transaction would be consummated. The Debtors have informed the L/C Administrative Agent that they are working to define the potential transaction and expect to produce more detail in the near future. However, until that transaction is defined and the Debtors are able to lay out a viable path forward, they cannot provide adequate protection of the L/C Secured Parties interests in the L/C Collateral in light of the priming liens that are part of the Proposed DIP Facility and the Debtors' continuing use of the L/C Secured Parties' cash collateral.

## LIMITED OBJECTION

4. Less than 18 months following its last bankruptcy case, the Company has been forced back into bankruptcy following crippling operating losses in uniquely challenging coal market. The Company's fall into these cases was so abrupt that it lacked time to develop a coherent exit path. In an attempt to allow the Company access to new capital while at the same time protecting the secured property interests of the L/C Secured Parties, the L/C Administrative Agent did not object to the interim relief requested in the Motion and has engaged with the Company and the Proposed DIP Lenders over the terms of the Proposed DIP Facility. Those discussions have been generally productive, but because the substance of what the Proposed DIP Facility will finance remains unclear and in light of the emergence of a potentially cheaper alternative, any final relief with respect to the Motion is premature.

5. While the Company's need for liquidity to maintain its operations is undeniable, there is real risk that the incremental debt will not result in incremental value of at least a like amount. Circumstances here make "taking it on faith" a dubious proposition. Access to reliable information has been limited. The Debtors lost virtually all their finance staff

in their 2014 relocation from St. Louis to West Virginia, thus losing valuable institutional knowledge.  In April 2015, the Debtors' chief executive officer abruptly resigned leaving a void in operating management.  The Company has expressed doubts about the reliability of historical numbers, making analysis and evaluation of the Proposed DIP Facility and its proposed budget virtually impossible.

6. Information deficiencies do not end there.  As of the date hereof, the Debtors have not been able to provide meaningful information about their proposed path forward.  While a potential purchaser of a large portion of the Debtors' assets has emerged, the Debtors have not produced any details of this potential transaction, including the means and timing for consummation.  Moreover, the effect of such a transaction on various secured claims entitled to adequate protection remains unclear.  Thus, the L/C Administrative Agent remains very concerned about the potential deterioration in the L/C Secured Parties' interests in the L/C Collateral without sufficient adequate protection.

7. The law is squarely in favor of the L/C Secured Parties.  As a condition to priming under section 364(d) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), a debtor must demonstrate that the primed party's interests are adequately protected.  The "adequate protection" requirement of section 364(d)(1)(B) means that the Bankruptcy Court should only approve the Proposed DIP Financing and the proposed non-consensual priming liens only if the L/C Secured Parties receive "the same level of protection [they] would have had if there had not been post-petition superpriority financing."[1]  Moreover, the Court must be "'particularly cautious' when assessing whether the secured creditor's interest is adequately

---

1 *Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.),* 16 F.3d 552, 564 (3d Cir. 1994)  (holding no adequate protection where debtor offered no new consideration to offset decrease in value of lender's collateral resulting from priming lien).

protected" where "superpriority financing displaces a lien relied upon by an existing secured creditor."[2] In addition, pursuant to section 363(e) of the Bankruptcy Code, a debtor's use of property, including cash collateral, shall be prohibited or conditioned on the provision of adequate protection to the party with an interest in the subject property. The purpose of adequate protection is to "guard the secured creditors' interest from a decline in the value of the collateralized property."[3] Given the facts of this case, the L/C Administrative Agent does not believe that the Debtors could possibly meet this standard with respect to the proposed priming lien and the Debtors' use of L/C Secured Parties' cash collateral.[4]

8. Against this backdrop, the Proposed DIP Facility must be seen for what it is: junior creditors are willing to invest "new money" in the hopes of increasing their odds of recovering on their pre-petition claims. But, through the proposed priming liens, the junior creditors also want to use the collateral that currently secures the L/C Secured Parties pre-petition claims to largely eliminate the risk of their "new money" investment. Thus, under the Proposed DIP Facility, the risk of the L/C Collateral value could shift from more junior creditors to the L/C Secured Parties. The L/C Administrative Agent is opposed to this objective.

9. The L/C Administrative Agent faces unique challenges in ensuring that the interests of the L/C Secured Parties in the L/C Collateral are adequately protected. A large portion of the L/C Collateral consists of coal reserves. Once the coal is extracted and sold, the Debtors cannot replenish it. Thus, the L/C Secured Parties have a heightened concern that a path forward be focused and aimed at viable, executable alternatives. Chasing ephemeral

---

[2] *In re Futures Equity L.L.C.,* No. 00-33682, 2001 Bankr. LEXIS 2229, at *15 (Bankr. N.D. Tex. Apr. 11, 2001) (holding no adequate protection where equity cushion was insufficient and estate did not benefit from the loan).

[3] *In re Panther Mountain Land Development, LLC*, 438 B.R. 169, 190 (Bankr. E.D. Ark. 2010) (citations omitted).

[4] *See In re James River Assoc.*, 148 B.R. 790, 796 (E.D. Va. 1992).

transactions for the benefit of junior creditors, only to find such deals not viable, could come at the expense of the L/C Secured Parties who might be better off in a liquidation scenario. Similarly, a narrow focus on a plan process may place the interests of junior creditors above those of the L/C Secured Parties who may be better served if the Debtors pursue a more open 363 sale process.

10. Under the circumstances, adequate protection entails, at a minimum, careful preservation of scarce estate resources and the establishment of a clear structure for receiving maximum achievable value for the Debtors' assets. The Debtors have the opportunity to accomplish both of these tasks in the near future by carefully evaluating the Alternative DIP Facility, providing better data and producing definitive documentation for a sale of a large portion of the Debtors' assets and defining the process by which such assets would be sold. Any final relief until these tasks are accomplished is premature and should be denied at this point. Because the speed of the Company's decline has been startling and the uncertainties of this case remain too great, the L/C Administrative Agent requests that the court adjourn the final hearing on the Proposed DIP Facility until the next omnibus hearing date.

[*Remainder intentionally left blank.*]

WHEREFORE, for the reasons set forth above, Barclays respectfully requests that this Court (i) adjourn the final hearing on the Proposed DIP Facility to the next omnibus hearing date, and (ii) grant such other and further relief as is just and proper.

Dated: June 1, 2015
Richmond, Virginia

/s/ Henry P. (Toby) Long, III
Tyler P. Brown (VSB No. 28072)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Tel:  (804) 788-8200
Fax:  (804) 788-8218

 -and-

Kenneth S. Ziman
Shana A. Elberg
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY 10036
Tel:  (212) 735-3000
Fax:  (212) 735-2000

- and -

Albert L. Hogan III
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 N. Wacker Drive
Chicago, IL 60606
Tel:  (312) 407-0700
Fax:  (312) 407-0411

*Counsel to Barclays Bank PLC in its capacity as the L/C Administrative Agent under the Prepetition LC/Term Loan Agreement*

## **CERTIFICATE OF SERVICE**

       I hereby certify that on this 1st day of June, 2015, a true and complete copy of the foregoing was filed electronically with the Clerk of the Court using CM/ECF and served by U.S. mail, postage prepaid on counsel for the Debtors identified below:

>Stephen E. Hessler
>Patrick Evans
>Kirkland & Ellis LLP
>601 Lexington Avenue
>New York, New York 10022
>
>James H.M. Sprayregen, P.C.
>Ross M. Kwasteniet
>Kirkland Ellis LLP
>300 North LaSalle
>Chicago, Illinois 60654
>
>Michael A. Condyles
>Peter J. Barrett
>Jeremy S. Williams
>Kutak Rock LLP
>Bank of America Center
>1111 East Main Street, Suite 800
>Richmond, Virginia 23219-3500

        /s/ *Henry P. (Toby) Long, III*