Jon D. Cohen (*pro hac vice* pending)  
STAHL COWEN CROWLEY ADDIS LLC  
55 West Monroe Street, Suite 1200  
Chicago, IL  60603  
Phone:  (312) 377-4565  
Fax:   (312) 423-8156  
E-mail:  jcohen@stahlcowen.com  

Gordon S. Woodward (VSB No. 42449)  
SCHNADER HARRISON SEGAL & LEWIS LLP  
750 9th Street, NW, Suite 550  
Washington, DC  20001-4534  
Phone:  (202) 419-4215  
Fax:   (202) 419-4253  
E-mail:  gwoodward@schnader.com  

*Counsel for Patriot Coal Non-Union Retiree VEBA Trust*

*Counsel for Patriot Coal Non-Union Retiree VEBA Trust*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| In Re: | Chapter 11 |
| **PATRIOT COAL CORPORATION,** | Case No. 15-32450-IKLP |
| Debtor. | (Joint Administration Requested) |

**OBJECTION TO MOTION SEEKING DIP FINANCING**

The Patriot Non-Union Retiree VEBA Trust, on behalf of itself and its Board Members in their personal capacity and other similarly situated non-union retirees ("Retirees") of Patriot Coal Corporation ("Patriot") and its affiliated Debtor entities (collectively the "Debtors"),[1] objects to material terms of the proposed Debtor In

---

[1] Affinity Mining Company; Apogee Coal Company, LLC; Appalachia Mine Services, LLC; Beaver Dam Coal Company, LLC; Big Eagle, LLC; Big Eagle Rail, LLC; Black Stallion Coal Company, LLC; Black Walnut Coal Company; Bluegrass Mine Services, LLC; Brook Trout Coal, LLC; Catenary Coal Company, LLC; Central States Coal Reserves of Kentucky, LLC; Charles Coal Company, LLC; Cleaton Coal Company; Coal Clean LLC; Coal Properties, LLC; Coal Reserve Holding Limited Liability Company No. 2; Colony Bay Coal Company; Cook Mountain Coal Company, LLC; Corydon Resources LLC; Coventry Mining Services, LLC; Coyote Coal Company LLC; Cub Branch Coal Company LLC; Dakota LLC; Day LLC; Dixon Mining Company, LLC; Dodge Hill Holding JV, LLC; Dodge Hill Mining Company, LLC; Dodge Hill of Kentucky, LLC; EACC Camps, Inc.; Eastern Associated Coal, LLC; Eastern Coal Company, LLC; Eastern Royalty, LLC; Emerald Processing, L.L.C.; Gateway Eagle Coal Company, LLC; Grand Eagle Mining, LLC; Heritage Coal Company LLC; Highland Mining Company, LLC; Hillside Mining Company; Hobet Mining, LLC; Indian Hill Company LLC; Infinity Coal Sales, LLC; Interior Holdings, LLC; IO Coal LLC; Jarrell's Branch Coal Company; Jupiter Holdings LLC; Kanawha Eagle Coal, LLC; Kanawha River Ventures I, LLC; Kanawha River Ventures II, LLC; Kanawha River Ventures III, LLC; KE Ventures, LLC; Little Creek LLC; Logan Fork Coal Company; Magnum Coal Company LLC; Magnum

Possession Financing sought by Debtors, which were never disclosed to this Court or other interested parties by Debtors (but instead were located in a June 1, 2015 Committee of Unsecured Creditors filing). In support of this objection the Retirees assert as follows:

## PRIOR PATRIOT COAL CHAPTER 11 BANKRUPTCY

1. On July 9, 2012, Patriot Coal Corp., and approximately one-hundred (100) of its wholly owned subsidiaries filed voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court for the Southern District of New York, subsequently transferred to the Eastern District of Missouri, Eastern Division, Case No. 12-51502 (hereinafter "Prior Patriot Chapter 11").

2. In the instant Chapter 11 proceedings, Debtors filed a Motion with respect to the payment of wages and employee benefits seeking permission to continue the payment of same. This included a reference to the ongoing payments of retiree benefits to the VEBA. [Docket No. 11].

3. Thereafter, Debtors filed a Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to Obtain Post-Petition Financing, (B) Authorizing Use of Cash Collateral, (C) Granting Liens and Super priority claims, (D) Granting Adequate Protection, (E) Modifying The Automatic Stay, (F) Scheduling a Final Hearing, and (G)

---

Coal Sales LLC; Martinka Coal Company, LLC; Midland Trail Energy LLC; Midwest Coal Resources II, LLC; Mountain View Coal Company, LLC; New Trout Coal Holdings II, LLC; Newtown Energy, Inc.; North Page Coal Corp.; Ohio County Coal Company, LLC; Panther LLC; Patriot Beaver Dam Holdings, LLC; Patriot Coal Company, L.P.; Patriot Coal Corporation; Patriot Coal Sales LLC; Patriot Coal Services LLC; Patriot Leasing Company LLC; Patriot Midwest Holdings, LLC; Patriot Reserve Holdings, LLC; Patriot Trading LLC; PCX Enterprises, Inc.; Pine Ridge Coal Company, LLC; Pond Creek Land Resources, LLC; Pond Fork Processing LLC; Remington Holdings LLC; Remington II LLC; Remington LLC; Rivers Edge Mining, Inc.; Robin Land Company, LLC; Sentry Mining, LLC; Snowberry Land Company; Speed Mining LLC; Sterling Smokeless Coal Company, LLC; TC Sales Company, LLC; The Presidents Energy Company LLC; Thunderhill Coal LLC; Trout Coal Holdings, LLC; Union County Coal Co., LLC; Viper LLC; Weatherby Processing LLC; Wildcat Energy LLC; Wildcat, LLC; Will Scarlet Properties LLC; Winchester LLC; Winifrede Dock Limited Liability Company; Yankeetown Dock, LLC.

Granting Related Relief [Docket No. 30] (hereinafter "DIP Motion"). Of particular import, the DIP Motion seeks to allow Debtors to obtain DIP financing. In this regard, the Debtors generally described the substance of the DIP financing contract and provided a copy of the DIP financing contract as Exhibit 1 to the Motion. [Docket No. 34].

**Undisclosed Milestones**

4. A material aspect of the DIP Financing contract relates to Section 4.03 of Exhibit 1 to the DIP Motion, "*Delayed Draw Funding Date Milestones*" (Docket No. 34, Section 4.03, pg. 49). In that Section there is a reference to a "Schedule 4.03" pursuant to which it is "The obligation of each Lender to honor any Request for Credit Extension after Closing Date and on any proposed Delayed Draw Funding Date is subject to the satisfaction of the Milestones on or prior to the corresponding dates set forth in Schedule 4.03." Restated, this is a list of criteria negotiated between Debtors and Lenders pursuant to which if any such criteria are not met…*no* Request for Credit Extension may be granted.

5. For reasons that are not clear from Debtors' pleadings, however, Schedule 4.03 was not produced in conjunction with the DIP Financing Motion, nor does it appear in any other pleadings or exhibits filed by Debtors. Moreover, while Debtors note the existence of certain "Milestones" in its DIP Motion, none are described whatsoever.

10. On the afternoon of June 1, 2015, two (2) days prior to the hearing scheduled on the DIP Motion, the Official Committee of Unsecured Creditors Committee (the "Committee") filed an Amended Objection to the DIP Motion. [Docket No. 183]. In conjunction with same, the Committee caused to be filed a Declaration of Leon

Szlezinger in Support of the Committee's Objection to the DIP Motion [Docket No. 179] ("Szlezinger Declaration").

11. For the first time, in the Szlezinger Declaration, the terms of the Schedule 4.03 Milestones were disclosed.[2]

12. As it relates to the gravamen of this Motion, buried in the DIP Motion Terms—as reflected in the previously *undisclosed* Milestones—is a requirement that "Debtors file a motion for relief under Bankruptcy Code section 1113 and/or 1114." As such, this has apparently been agreed to by Debtors.

13. More problematically, the DIP financing contract would essentially usurp this Court's role and the role of the Debtor's required good faith negotiations in the Section 1114 process by conditioning later credit extensions to the Company upon Section 1114 relief "in form and substance reasonably acceptable to the Required Lenders…" This would have the effect of end-running the very specific criteria, bargaining process, necessity of only justifiable reductions and equitable treatment required by Section 1114.

## Applicability of Section 1114

14. The rights of retirees in Chapter 11 bankruptcies have been governed by Section 1114 since its enactment as part of the Retiree Benefits Bankruptcy Protection Act of 1988. *See In re Visteon*, 612 F.3d 201, 216 (3rd Cir. 2010); *Arclin US Holdings, Inc.*, 416 B.R. 117, 119 (Bankr. Del. 2009). Section 1114 is neither optional nor is it to

---

[2] For some reason unknown to the Retirees, a copy of Schedule 4.03 was provided to the Committee during the Motion pleading period, but not otherwise provided to other interested parties nor filed in conjunction with any pleadings by Debtors.

be imposed at the discretion of the Debtors. Section 1114 provides a framework to ensure that a debtor seeking to modify or eliminate retiree benefits in a bankruptcy follows a process that compels it to provide a verifiable basis for the relief it seeks. It also sets forth a framework for negotiation or court action if a consensual resolution cannot be reached.

15. Section 1114(d) defines very broadly the retiree benefits that are entitled special protection. In this respect, Section 1114 defines "retiree benefits" as:

> …payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund or program (through the purchase of insurance or otherwise) maintained or established in who or in part by the debtor prior to filing a petition commencing a case under this title.

11 U.S.C. § 1114(a).

16. It is well established that when interpreting a statute, "Courts must determine 'congressional intent' and give effect to it." *In re Patrick Cudahy Inc.*, 88 B.R. 895, 898 (E.D. Wisc. 1988). Section 1114's legislative history is an "authoritative guide" to the statute's construction. *In re Garofalo's Finer Foods, Inc.*, 117 B.R. 363, 370 (Bankr. N.D. Ill 1990).

17. Congress intended Section 1114 to afford retirees "special treatment" in bankruptcy proceedings. *In re Visteon*, 612 F. 3d at 216. The legislative record of Section 1114 further makes it absolutely clear that the protections provided through Section 1114 are qualitatively more essential than those addressed by other sections of the bankruptcy code because retirees' lives *literally* depend on the benefits protected by

Section 1114. This special treatment of non-union retirees arises, in part, because retirees are unlike most other creditors of corporate debtors in a chapter 11 proceeding, such as lenders, lessors, bond holders, vendors and financial institutions. From the perspective of these later creditors, the debtors are but one of many entities with whom they do business.  Retirees, in sharp contrast, cannot absorb the loss of their retiree benefits through accounting adjustments, cannot write off the loss of their benefits, cannot pass along costs to other customers or count on future business with the debtor or successor in interest.  Most critically, because retirees are often living on low and fixed incomes, any disruption or reduction of their retiree benefits can have dire and immediate impacts on their lives.  Further, as opposed to active employees, retirees are completely at the mercy of the company because "unlike active workers…there is nothing the retirees have that the company needs."[3]

18.     The "statutory scheme and Congress' expressed intent indicates that [Section 1114] was enacted to achieve the very specific and focused objective of protecting retiree rights from unilateral termination." *Nelson v. Stewart*, 422 F.3d 463, 474 (7th Cir. 2005).  Indeed, in one of the earliest Section 1114 cases, it was stated that "[i]t is inescapable that through § 1114, Congress has sought to establish a priority for retirees in bankruptcy cases that assures that they receive a measure of enhanced treatment that is consistent with a bankruptcy court's role as a court of equity." *In re Ionosphere Clubs*, 134 B.R. 515, 527 (S.D.N.Y. 1991).

---

[3] Sec. 134 Cong. Rec. H3488 (daily ed. May 23, 1988) (statement of Rep. Edwards); Retiree Benefits Security Act of 1987 on S.548 Before Subcomm. on Courts and Admin. Practice of the Senate Comm on the Judiciary, 100th Cong., 1st Sess. 103-109 (testimony of G. Kirtland), 188-189 (testimony of J. Heisler).

19. Stated another way, Congress's purpose in enacting Section 1114 was to ensure that the debtors did not seek to effect reorganization "on the backs of the retirees" for the benefit of other parties in interest. *See In re Tower Automotive Inc.*, 2006 U.S. Dist. LEXIS 91958, *12 (S.D.N.Y. December 15, 2006) (Section 1114 "clearly evidences Congress's special concern for the rights of retirees." (*citing to Ionosphere*)). This policy was poignantly explained in yet another Section 1114 case where the Court noted that: "retirees are particularly vulnerable when their former employer goes bankrupt, because of their ages, their reduced incomes and their inability to replace the benefits . . . that are being terminated." *In re Farmland Industries, Inc.*, 294 B.R. 903, 918 (Bankr. W.D. Mo. 2003).

20. Here, although not formally disclosed by Debtors, but rather "outed" by the Committee, based upon the deal sought to be entered between Debtors' and the DIP Financers, the Debtors seek to terminate some or all benefits as defined by Section 1114(a).

**Procedural Protections of Section 1114**

21. Section 1114 "requires a Chapter 11 debtor to continue to pay all retiree benefits unless either the trustee or debtor in possession and an authorized representative of the retirees agree to a proposed modification, or absent such agreement, the trustee or the debtor in possession convinces the court that a proposed modification is necessary to permit the debtor's reorganization and is equitable." *In re Farmland, Ind., Inc.,* 294 B.R. 903, 919 (Bankr. W.D. Mo. 2003); *see also* 11 U.S.C. §1114(e).

22. Section 1114(d) further provides that:

7

PHDATA 5341914_1

> The court, upon a motion by any party in interest, and after notice and a hearing, *shall order the appointment of a committee of retired employees if the debtor seeks to modify or not pay retiree benefits* or if the court otherwise determines that it is appropriate, to serve as the authorized representative, under this section, of those persons receiving any retiree benefits not covered by a collective bargaining agreement. The United States Trustee shall appoint any such committee.

11 U.S.C. §1114(d) (emphasis supplied).

23. Indeed, compliance with Section 1114 is *mandatory* for all debtors once they have filed for bankruptcy protection…even in situations where a Debtor might assert a right of unilateral termination. *See In re Visteon*, 612 F.3d 210 (3rd Cir. 2010); *In re Farmland Indus., Inc.*, 294 B.R. 903 (Bankr. W.D. Mo. 2003); *Ames Department Stores, Inc. v. Employees' Committee of Ames Department Stores*, 1992 U.S. Dist. LEXIS 18275 (S.D.N.Y. 1992).

24. The payments and treatment of the above noted retiree benefits may not be reduced, modified or terminated unless Debtors <u>fully</u> comply with Section 1114. *See In re General Datacomm Ind., Inc. v. Acara*, 407 F.3d 616, 620 (3d Cir. 2005). In this respect, Section 1114(e) mandates that the Debtor "shall timely pay and shall not modify any retiree benefits…" unless: (a) after notice and hearing, the court orders modification of retiree benefits pursuant to Subsections (g) or (h) of this Section; or (b) the Debtors and the authorized representatives of the retirees reach another agreement.

25. Once the Retiree Committee is formed, Section 1114 then requires that a debtor:

> (A) make a proposal to the…retirees, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the retiree benefits that are necessary to permit the reorganization of the debtor and assures that all creditors, the

debtor and all of the affected parties are treated fairly and equitably; and (B) provide, subject to subsection (k)(3), the representative of the retirees with such relevant information as is necessary to evaluate the proposal.

Section 1114 (f)(1).

26. Here, there has been no consensual modification, nor could there be without the prior appointment of a Section 1114 Retiree Committee. Likewise, Debtors have not demonstrated to the Retirees or the Court that the reduction of retiree benefits is even "necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably and is clearly favored by the balance of the equities." (See Section 1114.)

27. Indeed, a failure by Debtors to meet its burden of proof as to *any* one of Section 1114 requirements is sufficient to prevent any modification of retiree benefits, let alone their termination. *See*, *In re General Datacomm Ind., Inc. v. Acara*, 407 F.3d 616, 620 (3d Cir. 2005) ("[o]nly after the foregoing requirements have been met, and such good-faith negotiations have occurred, is the court empowered to grant the modification motion, if, among other things, modification is necessary to permit reorganization of the debtor."); *In re Garafalo's Finer Foods, Inc.*, 117 B.R 363, 370 (Bankr. N.D. Ill. 1990).

**The Debtors Must Adhere to Section 1114 Process**

28. In this case, Debtors are shoe-horning an alleged obligation to seek and obtain relief pursuant to Section 1114 into a schedule of Milestones that was: (a) not filed with this Court; (b) not produced to other interested parties; and (c) not otherwise described in its Motion seeking relief under the DIP Motion.

29. Accordingly, this Court should not condone the placement of previously undisclosed powers of the DIP lenders to usurp the Section 1114 process. Retiree's do not object to the mere necessity that the DIP Lenders require Debtor's to file for some sort of Section 1114 relief (if necessary), but there is no basis upon which DIP Lenders can hold the financing hostage if the Section 1114 process does not meet with its approval.

30. Termination or reduction of benefits pursuant to Section 1114 is not something that should be done in the shadows, nor should the affected retirees be surprised by any alleged "necessity" to modify benefits, nor be prejudiced by having a Debtor take active steps to reduce or eliminate benefits while the retirees are unrepresented by counsel and not being afforded the rights they are otherwise entitled to under Section 1114.

PHDATA 5341914_1

**Relief Requested**

31. The Retirees respectfully request that the Court deny any relief sought in the DIP Motion pursuant to which any protections arising under Section 1114 will be abrogated, and that no requirement of DIP financing be predicated upon Lender's approval of any result provided by agreement between Debtors and Retirees or by this Court.

Dated: June 2, 2015

        SCHNADER HARRISON SEGAL & LEWIS LLP

        /s/ Gordon S. Woodward
        Gordon S. Woodward (VSB No.42449)
        SCHNADER HARRISON SEGAL & LEWIS LLP
        750 9th Street, NW, Suite 550
        Washington, DC 20001-4534
        Phone: (202) 419-4215
        Fax:   (202) 419-4253
        E-mail:gwoodward@schnader.com

        *Local Counsel for Patriot Coal Non-Union Retiree VEBA Trust*

        STAHL COWEN CROWLEY ADDIS LLC

        /s/ Jon D. Cohen
        Jon D. Cohen, Esq. (*Pro Hac Vice* pending)
        STAHL COWEN CROWLEY ADDIS LLC
        55 West Monroe Street, Suite 1200
        Chicago, Illinois 60603
        Phone: (312) 641-0060
        Fax:   (312) 641-6959
        E-mail:jcohen@stahlcowen.com

        *Lead Counsel for Patriot Coal Non-Union Retiree VEBA Trust*

**CERTIFICATE OF SERVICE**

        The undersigned hereby certifies that on June 2, 2015, a true and correct copy of the foregoing Objection to Motion Seeking DIP Financing was served by electronic delivery to all parties receiving notice from the Court's ECF system.

        /s/   Gordon S. Woodward