| **CROWLEY, LIBERATORE, RYAN & BROGAN, P.C.**<br>Karen M. Crowley, VSB #35881<br>Ann B. Brogan, VSB #25567<br>150 Boush Street, Suite 300<br>Norfolk, VA 23510<br>Telephone: (757) 333-4500<br>Facsimile: (757) 333-4501<br>**MOONEY, GREEN, SAINDON, MURPHY & WELCH, P.C.**<br>Paul A. Green<br>John R. Mooney<br>Richard C. Welch<br>1920 L Street, N.W., Suite 400<br>Washington, D.C. 20036<br>Telephone: (202) 783-0010<br>Facsimile: (202) 783-6088 | **MORGAN, LEWIS & BOCKIUS LLP**<br>John C. Goodchild, III<br>Rachel Jaffe Mauceri<br>1701 Market St.<br>Philadelphia, PA 19103-2921<br>Telephone: (215) 963-5000<br>Facsimile: (215) 963-5001<br>- and -<br>Julia Frost-Davies<br>One Federal St.<br>Boston, MA 02110-1726<br>Telephone: (617) 951-8000<br>Facsimile: (617) 345-5054 |

*Attorneys for the United Mine Workers of America 1974 Pension Plan and Trust, the United Mine Workers of America Combined Benefit Fund and the United Mine Workers of America 1992 Benefit Plan*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PATRIOT COAL CORPORATION, *et al.* | ) | Case No. 15-32450 (KLP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**OBJECTION OF THE UNITED MINE WORKERS OF AMERICA 1974 PENSION PLAN AND TRUST, THE UNITED MINE WORKERS OF AMERICA COMBINED BENEFIT PLAN AND THE UNITED MINE WORKERS OF AMERICA 1992 BENEFIT PLAN, AND JOINDER TO THE OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' MOTION FOR ORDER: (I) APPROVING THE DISCLOSURE STATEMENT; (II) APPROVING SOLICITATION AND NOTICE MATERIALS; (III) APPROVING FORMS OF BALLOTS; (IV) ESTABLISHING SOLICITATION AND VOTING PROCEDURES; (V) ESTABLISHING PROCEDURES FOR ALLOWING AND ESTIMATING CERTAIN CLAIMS FOR VOTING PURPOSES; (VI) SCHEDULING A CONFIRMATION HEARING AND <u>(VII) ESTABLISHING NOTICE AND OBJECTION PROCEDURES</u>**

The United Mine Workers of America 1974 Pension Plan and Trust (the "1974 Pension Plan"), the United Mine Workers of America Combined Benefit Fund (the "Combined Fund"), and the United Mine Workers of America 1992 Benefit Plan (the "1992 Plan," and together with the CBF, the "Coal Act Funds" and the Coal Act Funds, together with the 1974 Pension Plan, "UMWA Funds"), by and through their undersigned attorneys, hereby (a) object to the Debtors' Motion (the "Motion") for Entry of an Order (I) Approving the Disclosure Statement (the "Disclosure Statement"); (II) Approving Solicitation and Notice Materials; (III) Approving Forms of Ballots; (IV) Establishing Solicitation and Voting Procedures; (V) Establishing Procedures for Allowing and Estimating Certain Claims for Voting Purposes; (VI) Scheduling a Confirmation Hearing and (VII) Establishing Notice and Objection Procedures and (b) join the Objection of the Official Committee of Unsecured Creditors (the "Committee") to the Motion. In support of this Objection and Joinder, the UMWA Funds respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Debtors' Disclosure Statement is deficient in the material information necessary to satisfy Section 1125 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and should not be approved by this Court. The Disclosure Statement fails to sufficiently describe the nature and scope of the Debtors' joint and several obligations to the UMWA Funds, including that:

(a) liabilities to the Coal Act Funds are entitled to treatment as priority – or, depending on timing, administrative – claims under the Bankruptcy Code, and, because they are statutory obligations and not merely contractual ones, they may not be subject to modification or rejection under the Bankruptcy Code; and

(b) should the Bankruptcy Court grant the Debtors' motion to reject their collective bargaining obligations pursuant to Section 1113 of the Bankruptcy Code, the Debtors – jointly and severally – will incur a nearly $1 billion withdrawal liability claim to the 1974 Pension Plan that will swamp the unsecured creditor class and dilute recoveries, to the extent otherwise available, to other general unsecured creditors.

This information is material to a creditor making a determination with respect to a proposed plan, and the Disclosure Statement must be substantially revised to explicitly address these obligations.

2. The Debtors are obligated by their lenders to push these cases through the Chapter 11 process at breakneck speed, which has forced them to file an incomplete Disclosure Statement and proposed plan of reorganization (the "Plan"). No creditor can reasonably be expected to vote on a plan that fails to fully explain their treatment, including, with respect to general unsecured creditors, the mechanism and the source of the funding for the liquidating trust from which they will receive any distributions.

3. The Debtors have not yet determined how they will (or whether they can) fund the Plan. Thus, not only is the Disclosure Statement insufficient to enable a hypothetical creditor to determine how to vote, the Debtors have filed a Plan that is facially non-confirmable, as, among other things, it can neither satisfy the "best interests of creditors" nor feasibility tests mandated by the Bankruptcy Code, and contains overly broad third-party releases that are unjustified and are impermissible under Fourth Circuit law.

4. For all of the foregoing reasons, and as further described herein, the UMWA Funds request that this Court deny the Motion.[1]

---

[1] The UMWA Funds are mindful that plan related objections should be reserved for confirmation and should not be raised in the guise of a disclosure statement objection. Accordingly, the UMWA Funds will not raise confirmation objections at the disclosure statement hearing, but expressly reserve their rights to raise any and all plan objections of any kind, including, without limitation, to the proposed releases included in the Plan.

**BACKGROUND**

5. On May 12, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

6. On May 21, 2015, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee"). The 1974 Pension Plan is a member of the Committee.

7. On July 14, 2015, the Debtors filed the Motion.

8. On July 16, 2015, the Debtors filed their *Motion for Entry of an Order (I) Authorizing, but not Directing, the Debtors to (A) Reject Their Collective Bargaining Agreements, (B) Modify Certain Union-Related Retiree Benefits, and (C) Implement Terms of their Section 1113 and Section 1114 Proposal, and (II) Granting Related Relief* (the "1113/1114 Motion"), pursuant to which the Debtors have requested authority to reject their collective bargaining obligations, and, among other things, to cease contributing to the UMWA Funds. Substantially contemporaneously herewith, the Coal Act Funds and the 1974 Pension Plan have filed or will file their responses to the 1113/1114 Motion. The Disclosure Statement has not been updated since the filing of the 1113/1114 Motion.

9. Substantially contemporaneously herewith, the Committee has filed or will file its Objection to the Motion (the "Committee Objection").

**OBJECTION**

10. The UMWA Funds object to the Disclosure Statement to the extent that it fails to fully and precisely describe the nature and extent of the Debtors' obligations to the UMWA Funds.

11.     Section 1125 of the Bankruptcy Code requires that a disclosure statement contain "adequate information," defined as:

> information of any kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, *that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan* . . .

11 U.S.C. § 1125(a)(1) (emphasis added). While the court has discretion to decide whether a disclosure statement contains adequate information, approval should be denied "if 1) it is apparent that the plan will not comply with Code § 1129(a) and 2) if it does not contain such information so that all creditors and equity shareholders can make an intelligent and informed decision as to whether to accept or reject the plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988). As the District Court for the Eastern District of Virginia has observed:

> Creditors form their ideas about what they will receive out of the debtor's estate from [the] disclosure statement. It plays a pivotal role in the give and take among creditors and between creditors and the debtor that leads to a confirmed negotiated plan of reorganization by requiring adequate disclosure to the parties so they can make their own decisions on the plan's acceptability.

*In re A.H. Robins Co., Inc.*, 216 B.R. 175, 180 (E.D. Va. 1997) *aff'd sub nom. In re A. H. Robins Co., Inc.*, 163 F.3d 598 (4th Cir. 1998). *See also In re Radco Properties, Inc.*, 402 B.R. 666, 682 (Bankr. E.D.N.C. 2009) ("Creditors not only rely on the disclosure statement to form their ideas about what sort of distribution or other assets they will receive but also what risks they will face. As such, the importance of full and honest disclosure is critical and cannot be overstated.")

12.     The Disclosure Statement, as currently drafted, only superficially describes the nature of the Debtors' obligations to the UMWA Funds. A brief summary of the Debtors' obligations to the UMWA Funds is set forth below. The Disclosure Statement must be

supplemented to include information, consistent with the descriptions set forth herein and in the UMWA Funds' 1113/1114 Responses, that more fully describes the Debtors' obligations, including the potential effect of these obligations on the Debtors' estates.

A.    The Coal Act Funds

13.    The Coal Industry Retiree Health Benefit Act of 1992, Pub. L. No. 102-486, 106 Stat. 2776, 3036-56, *codified at* 26 U.S.C. §§ 9701-9722 (the "Coal Act"), was enacted to ensure that certain retired coal miners and their eligible dependents receive the retiree health benefits promised them in collective bargaining agreements between the United Mine Workers of America ("UMWA") and the Bituminous Coal Operators' Association ("BCOA"), a multiemployer bargaining association. As part of the Coal Act, Congress created two new trust funds – the Combined Fund and the 1992 Plan – for the provision of health care benefits to retired miners and their survivors and dependents. Among other things, the Coal Act requires the Debtors to pay monthly premiums to the Combined Fund and the 1992 Plan.

14.    *The Combined Benefit Fund.* The Combined Fund is a result of the merger of the 1950 Benefit Trust and the 1974 Benefit Trust. *See* 26 U.S.C. § 9702(a)(2). The Combined Benefit Fund provides health and death benefits to coal industry retirees who, as of July 20, 1992, were eligible to receive, and were receiving, benefits from the 1950 Benefit Trust or the 1974 Benefit Trust. *See* 26 U.S.C. §§ 9703(a), (b), (e), (f). These benefits are paid in part through the collection of annual health benefit premiums from assigned coal operators.

15.    *The 1992 Plan.* Pursuant to the Coal Act, the Debtors have certain statutory, non-negotiable obligations to provide retiree health benefits to approximately 5,344 retired coal miners and their dependents through an individual employer plan, or IEP. If the Debtors and their related persons cease providing the statutorily-mandated benefits through their IEP then those Coal Act-

eligible miners and their dependents would be eligible to receive benefits from the 1992 Plan, which will be obligated to provide and pay for these benefits. These benefits are paid, in part, by monthly per beneficiary premiums from each contributing operator.

16. *The Debtors' Coal Act Obligations Are Not Contractual.* Because the Debtors' statutory obligations to the Coal Act Funds are non-negotiable and exist separately from their collectively bargained obligations, these obligations cannot be terminated through the 1113/1114 Motion. Although the Bankruptcy Court may rule on the 1113/1114 Motion prior to the hearing on the Disclosure Statement, the Court's determination of that motion may be subject to appellate proceedings, the further determination of which may substantially affect the outcome of these Chapter 11 cases. The Debtors' Disclosure Statement should make clear that any ruling by the Court with respect to the modification of obligations to the Coal Act Funds may be subject to appellate review.

17. *Claims of the Coal Act Funds.* In addition, Coal Act obligations are treated as taxes in bankruptcy, and are non-dischargeable, non-negotiable, and payable on an ongoing basis. *See Adventure Resources,* 137 F.3d at 793 (4th Cir. 1998); *In re Leckie Smokeless Coal Co.,* 99 F.3d at 583 (4th Cir. 1996). Accordingly, any pre-petition claims of the Coal Act Funds are entitled to priority treatment under Bankruptcy Code section 507(a)(8), including claims that may arise if the Debtors, are authorized in connection with a determination of the 1113/1114 Motion to discontinue their monthly premium payments to the Combined Fund before the end of the current plan year.

18. Consistent with the foregoing, the Combined Fund has filed contingent proofs of claim with respect to nearly $1 million in premium payments that are due and owing from certain

Debtors for the current plan year, which ends on September 30, 2015.[2] Pursuant to the Debtors' Plan, "Priority Tax Claims" – i.e., those arising under Bankruptcy Code section 507(a)(8) – are entitled to payment in full. *Plan*, § II.D, at 21.

19. Further, the Debtors' premium obligations to the Combined Fund for the next plan year will accrue in October 2015. Such obligations will constitute administrative claims of the Debtors' estates, which also will be entitled to payment in full under the Plan. *Id.*, § II.A, at 20. The Combined Fund estimates that such administrative claims could exceed $3.5 million.

20. In contrast, premium payments under the 1992 Plan accrue on a monthly basis. To the extent the Debtors fail to make payments to the 1992 Plan, those claims, too, will constitute administrative expense claims.

B.  The 1974 Pension Plan.

21. *The Debtors' Obligations.* The 1974 Pension Plan was established through collective bargaining in 1974 between the UMWA and the BCOA. The 1974 Pension Plan provides pension and death benefits to approximately 90,000 eligible beneficiaries who are retired or disabled miners and their eligible surviving spouses. The contribution obligations of contributing employers to the 1974 Pension Plan, benefit levels provided to the Plan's beneficiaries and participants, and other substantive terms of the 1974 Pension Plan are established from time to time in collectively bargained National Bituminous Coal Wage Agreements between the UMWA and the BCOA.

---

[2] The following Debtors are jointly and severally liable for the payment of annual premiums with respect to 651 Combined Fund beneficiaries, and a potential claim of $745,116.00 for premiums due on July 25, 2015, August 25, 2015 and September 25, 2015: (i) Colony Bay Coal Company LLC; (ii) Eastern Associated Coal, LLC; (iii) Mountain View Coal Company, LLC; (iv) Heritage Coal Company LLC; and (v) Pine Ridge Coal Company, LLC. The following Debtors are jointly and severally liable for the payment of annual premiums with respect to 215 Combined Fund beneficiaries, and a potential claim of $246,081 for premiums due on July 25, 2015, August 25, 2015 and September 25, 2015: (i) Apogee Coal Company, LLC; (ii) Catenary Coal Company, LLC; and (iii) Hobet Mining, LLC.

22. Nine Debtors are participating employers in the 1974 Pension Plan, pursuant to their collective bargaining agreements, and are therefore obligated with respect to: (a) monthly pension contributions that must be made for as long as the employer participates in the 1974 Pension Plan and (b) "withdrawal liability" accruing upon a partial or complete withdrawal by the employer from participation in the 1974 Pension Plan.[3] Each of the remaining Debtors is an "employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5). Under section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), the Debtor and all trades or businesses under common control with it constitute a single employer participating in the 1974 Pension Plan. Each Debtor, therefore, is jointly and severally liable for any withdrawal liability incurred by any employer in its controlled group.

23. Withdrawal liability is imposed by federal statute and is based upon the portion of the 1974 Pension Plan's unfunded vested benefits attributable to the employer. *See* Section 4211 of ERISA, 29 U.S.C. §§ 1391. Under section 4201 of ERISA, 29 U.S.C. § 1381, upon its withdrawal from a multiemployer pension plan, a previously contributing employer is immediately liable for its proportionate share of the 1974 Pension Plan's unfunded vested pension liabilities. In the case of the 1974 Pension Plan, the full amount of an employer's withdrawal liability obligation becomes immediately due and owing upon a "default." Under terms adopted by the Trustees of the 1974 Pension Plan, a default occurs where an employer has: (i) become insolvent;

---

[3] The following Debtors are participating employers pursuant to their collective bargaining arrangements: (i) Apogee Coal Company, LLC; (ii) Colony Bay Coal Company LLC; (iii) Eastern Associated Coal, LLC; (iv) Heritage Coal Company LLC; (v) Highland Mining Company, LLC; (vi) Hobet Mining, LLC; (vii) Mountain View Coal Company, LLC; (viii) Pine Ridge Coal Company, LLC; and (ix) Rivers Edge Mining LLC. According to the Disclosure Statement, the Debtors made the following contributions to the 1974 Pension Plan: $20.8 million in 2012, $20.6 million in 2013, and $16.8 million in 2014. *Disclosure Statement,* § II.A.4, at 11. The 1974 Pension Plan's records show contributions of $20.3 million in 2012, $17.7 million in 2013, and $16.4 million in 2014.

(ii) filed for bankruptcy; (iii) assigned, pledged, mortgaged or hypothecated property; or (iv) engaged in a transaction which has as a principal purpose the evasion or avoidance of withdrawal liability.

24. Pursuant to the 1113/1114 Motion, the applicable Debtors have sought this Court's authority to withdraw as participating employers from the 1974 Pension Plan, which would effect a complete withdrawal pursuant to the terms of the 1974 Pension Plan's governing documentation and Sections 4201 and 4203 of ERISA, 29 U.S.C. §1381 and 1383. If the Bankruptcy Court grants the 1113/1114 Motion, and the Debtors completely withdraw during the plan year beginning July 1, 2015 and ending June 30, 2016, it is estimated that the Debtors will incur withdrawal liability of approximately $911,881,596.43.

25. Because the Debtors' liability is joint and several, the 1974 Pension Plan has filed contingent proofs of claim asserting a $1 billion contingent general unsecured claim (subject to priority, to the extent applicable under section 507(a)(5) of the Bankruptcy Code) against each Debtor. The 1974 Pension Plan understands that its claim is by far the largest asserted in these Chapter 11 cases, and will significantly dilute any other asserted general unsecured claim. Nevertheless, the Disclosure Statement contains no explanation of the 1974 Pension Plan's claim, or its effect on the general unsecured class of any Debtor. This information is vital to a creditor trying to understand its possibility for recovery under a proposed Plan, and should be included in the Disclosure Statement.

## JOINDER

26. The UMWA Funds concur with and join the factual and legal arguments advanced in the Committee Objection and support the relief requested therein. Accordingly, the UMWA Funds respectfully request that this Court deny the relief sought in the Motion.

## **CONCLUSION**

27. The Debtors' Disclosure Statement lacks critical information regarding the Debtors' obligations to the UMWA Funds, and as it fails to provide adequate information to satisfy the statutory threshold set forth in Section 1125 of the Bankruptcy Code, cannot be approved. If the Debtors wish to conduct expedited proceedings, they must be prepared to provide plan and solicitation materials sufficient to enable a hypothetical creditor, typical of the holders of claims or interests in these cases, <u>to make an informed judgment about the Plan</u>. Having failed to do so in the initial instance, this Court should deny the Motion in its entirety pending further disclosure from the Debtors, including with respect to each of the points discussed in the Committee's Objection and herein.

28. The UMWA Funds reserve all rights (i) to amend or supplement this Objection and Joinder based upon any facts or arguments that come to light prior to the hearing on the Motion and (b) to be heard before this Court with respect to the subject matter of the Committee Objection and this Objection.

WHEREFORE, the UMWA Funds hereby request that this Court (i) deny the Motion, (ii) require any further Disclosure Statement to incorporate the disclosure regarding the UMWA Funds described herein and (iii) grant such other relief as the Court deems appropriate.

Dated: August 10, 2015

**CROWLEY, LIBERATORE, RYAN & BROGAN, P.C.**

By:    /s/ Karen M. Crowley

Karen M. Crowley, VSB #35881
Ann B. Brogan, VSB #25567
150 Boush Street, Suite 300
Norfolk, VA 23510
Telephone: (757) 333-4500
Facsimile: (757) 333-4501

**MOONEY, GREEN, SAINDON, MURPHY & WELCH, P.C.**
Paul A. Green
John R. Mooney
Richard C. Welch
1920 L Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 783-0010
Facsimile: (202) 783-6088

**MORGAN, LEWIS & BOCKIUS LLP**
John C. Goodchild, III
Rachel Jaffe Mauceri
1701 Market St.
Philadelphia, PA 19103-2921
Telephone:    (215) 963-5020
Facsimile:    (215) 963-5001
    - and –
Julia Frost-Davies
One Federal St.
Boston, MA 02110-1726
Telephone:    (617) 951-8422
Facsimile:    (617) 345-5054

*Attorneys for the United Mine Workers of America 1974 Pension Plan and Trust, the United Mine Workers of America Combined Benefit Fund and the United Mine Workers of America 1992 Benefit Plan*