IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| PATRIOT COAL CORPORATION, *et al.* ) | Case No. 15-32450 (KLP) |
| ) | |
| Debtors. ) | (Jointly Administered) |
| ) | |
| ) | |

**DECLARATION OF LEON SZLEZINGER
IN SUPPORT OF OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO DEBTORS' MOTION FOR ENTRY OF ORDER (I) APPROVING
THE DISCLOSURE STATEMENT; (II) APPROVING SOLICITATION AND NOTICE
MATERIALS; (III) APPROVING FORMS OF BALLOTS; (IV) ESTABLISHING
SOLICITATION AND VOTING PROCEDURES; (V) ESTABLISHING PROCEDURES
FOR ALLOWING AND ESTIMATING CERTAIN CLAIMS FOR VOTING PURPOSES;
(VI) SCHEDULING A CONFIRMATION HEARING AND (VII) ESTABLISHING
NOTICE AND OBJECTION PROCEDURES**

I, Leon Szlezinger, declare under penalty of perjury:

1. I am a Managing Director and Joint Global Head of Restructuring & Recapitalization at Jefferies LLC ("Jefferies"), an investment banking and financial advisory firm with principal offices located at 520 Madison Avenue, New York, New York 10022, as well as at other locations worldwide. The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (the "Debtors") has selected Jefferies as its financial advisor and investment banker, and I am authorized to make this declaration on behalf of the Committee in support of the Committee's objection (the "Objection"), filed contemporaneously herewith, to the *Debtors' Motion for Entry of Order (I) Approving the Disclosure Statement (II) Approving Solicitation and Notice Materials; (III) Approving Forms of Ballots; (IV) Establishing Solicitation and Voting Procedures; (V) Establishing Procedures for Allowing and Estimating Certain Claims for Voting Purposes;*

ny-1198578

*(VI) Scheduling a Confirmation Hearing and (VII) Establishing Notice and Objection Procedures* [Docket No. 497] (the "Disclosure Statement Motion").[1] Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein.[2]

## QUALIFICATIONS

2.      Jefferies provides a broad range of corporate advisory services to its clients including, without limitation, services relating to the following: (a) general financial advice; (b) mergers, acquisitions, and divestitures; (c) special committee assignments; (d) capital raising; and (e) corporate restructurings. Jefferies and its senior professionals have extensive experience in the reorganization and restructuring of troubled companies, both out of court and in chapter 11 proceedings. Jefferies has advised debtors, creditor and equity constituencies, and purchasers in numerous reorganizations in the United States and worldwide. Since 2007, Jefferies has been involved in over 100 restructurings representing over $200 billion in restructured liabilities, many of which included M&A elements.

3.      At Jefferies, I have advised on numerous complex restructurings, including Caesars Entertainment Operating Company, MPM Silicones (Momentive), AMR (American Airlines), K-V Discovery Solutions, Eastman Kodak, MSR Golf Resort, Innkeepers USA Trust, Spheris, RathGibson and Medical Staffing Network, among others.

4.      Before joining Jefferies, I was a Senior Managing Director at Mesirow Financial Consulting, specializing in Restructuring Advisory Services. Prior to that, I was a partner at KPMG LLP and PricewaterhouseCoopers LLP specializing in Financial Advisory Services.

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan or the Disclosure Statement Motion, as applicable.

[2] Certain disclosures herein relate to matters within the personal knowledge of other professionals at Jefferies and are based on information provided by them.

2

ny-1198578

## BACKGROUND

5.  By the Disclosure Statement Motion, the Debtors seek entry of an order from the Court, which finds that the Disclosure Statement contains adequate information about the proposed Chapter 11 plan in order to enable the Debtors' creditors to "make an informed judgment about the Plan." *See* 11 U.S.C. §1125(a)(1). For the reasons described herein, based on my restructuring experience in Chapter 11 bankruptcy proceedings, which includes evaluating both plans and the associated disclosure statements, I do not believe that the Disclosure Statement (in its current form) contains enough material information about the value of the Debtors' assets that will allow the Debtors' creditors to make an informed decision as to whether they should vote for or against the Plan.

## ANALYSIS

I.  **The Disclosure Statement Does Not Separately Allocate Value For The Debtors' Unencumbered Assets, or Adequately Demonstrate How Such Value is Allocated to Creditors**

6.  The Debtors' Liquidation Analysis, which is attached as Exhibit F to the Disclosure Statement, both fails to identify the value of the Debtors' unencumbered assets and allocate that value to the Debtors' general unsecured creditors as part of the recovery waterfall. The "Total Asset Proceeds" set forth in the Liquidation Analysis is derived by aggregating multiple categories of proceeds generated from the Debtors' hypothetical liquidation of its assets. *See* Liquidation Analysis (Notes to Proceeds Available for Distribution). It is my view that the Liquidation Analysis improperly allocates all value associated with the Debtors' assets to the secured creditors, thereby implying that the secured creditors have a lien on all of the Debtors' assets or the proceeds therefrom. However, it is my understanding that certain assets, and the proceeds thereof, are not encumbered by the secured creditors' liens. As a result, there are two material omissions in the Debtors' presentation that should be corrected.

3

ny-1198578

7.    <u>First</u>, Avoidance Actions are not included among the asset categories in the Liquidation Analysis even though a trustee in a chapter 7 wind down scenario is likely to pursue such causes of action in order to create value for the Debtors' estate.

8.    According to the Debtors' Amended Statement of Financial Affairs [Docket No. 487], Patriot Coal Corporation made payments aggregating $274 million to their creditors in the ninety days before the Petition Date. In addition, the Debtors transferred certain of their assets to third parties before the Petition Date. Subject to a closer examination of the particular creditors' defenses to the Avoidance Actions, in my view, if Avoidance Actions are to be prosecuted, then the Debtors' estates (and any successor thereto) could receive significant value from the proceeds of such actions.

9.    It is my understanding that the terms of the Final DIP Order provide neither the Prepetition Secured Parties nor the DIP Lenders with liens or superpriority claims against the Avoidance Actions or the proceeds thereof. Therefore, any proceeds should not be available for distribution to secured creditors.

10.    <u>Second</u>, the Debtors neither disclose in the Disclosure Statement nor in the Liquidation Analysis that a portion of their real property leasehold interests are unencumbered. In addition, the Debtors also do not disclose that a portion of these unencumbered leasehold interests are a part of the Blackhawk Sale. It is my understanding that a significant portion of the Real Property Leases (as defined in the Final DIP Order) to which the Debtors are lessees do not permit the Debtors to encumber those leasehold interests by pledging those interests as collateral to their lenders. As a result, such leasehold interests are specifically excluded from the DIP Collateral.

ny-1198578

11. It is my view that such unencumbered Real Property Leases may have substantial value that should benefit the Debtors' general unsecured creditors, including any consideration provided through the Blackhawk Sale.

II. **The Disclosure Statement Contains Insufficient Information to Assess Whether General Unsecured Creditors Should Be Entitled To A Recovery Greater Than 0%**

12. The Liquidation Analysis provides that Unsecured Claims will get 0% in a liquidation scenario. In my view, the Liquidation Analysis is incomplete. If it were to be revised to account for the value associated with the proceeds of Avoidance Actions, the value of the unencumbered Real Property Leases, and the allocation of this value to the Unsecured Claims, then holders of Unsecured Claims may obtain a recovery, in a liquidation scenario, materially greater than 0%. In its present form, the Debtors do not define what the estimated recovery for Unsecured Claims will be under the terms of the Plan. As a result, the absence of material information in the Liquidation Analysis, together with an undetermined recovery in the Plan, does not allow General Unsecured Creditors to properly evaluate whether the Plan is in their best interests.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: August 10, 2015

_____
Leon Szlezinger
Managing Director